**GLEN LINCOLN, INC. a Pennsylvania Corp. t/a Sheraton Great Valley Hotel**

v.

**ZURICH INSURANCE COMPANY.**

**Civil Action No. 95–5621.**

United States District Court, E.D. Pennsylvania.

Nov. 27, 1996.

---

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

In this action we are called upon to interpret an insurance policy that purports to grant coverage for "discrimination which is not deemed unlawful". Plaintiff Glen Lincoln, Inc., trading as Sheraton Great Valley Hotel (Sheraton) brought this declaratory judgment suit against Zurich Insurance Company seeking indemnity and defense costs from an underlying discrimination lawsuit, pursuant to a Zurich Comprehensive General Liability Policy. Presently before the court are the parties' cross motions for summary judgment. As we find that the ordinary meaning of the language used in the policy endorsement applies to the loss, and the construction of the exclusion urged by Zurich would render coverage under the endorsement a nullity, we will grant Sheraton's motion and deny Zurich's.

■ The facts undergirding the cross motions are not in dispute. At all time material hereto, there existed in full force and effect a Comprehensive General Liability policy issued by Zurich to Sheraton, which contained a manuscript endorsement providing:

It is hereby understood and agreed that the definition of a personal injury is amended to include discrimination which is not deemed unlawful under state or federal law which is committed by or at the direction of the named insured or any additional named insured.

During the policy period, an employee of Sheraton filed a complaint with the Pennsylvania Human Relations Commission, as well as a complaint in this court, alleging he was terminated from employment because he was HIV positive. While Zurich has paid the cost of defense in the district court action, it has refused to pay the cost of defense in the PHRC proceeding, as well as indemnify

Sheraton for the amount paid to the former employee to settle the district court action.

The settlement agreement provided for payment to the former employee of $155,000. It specifically provided that

> The Agreement shall in no way be construed as an admission by The Defendant Parties .... that they acted wrongfully with respect to Plaintiff or that Plaintiff has any claim against the Defendant Parties and additional Releasees. The Defendant Parties and additional Releasees specifically disclaim any liability to or wrongful conduct against Plaintiff.

Thus, there has never been an admission of wrongful conduct on the part of Sheraton.

Zurich argues it has no duty to indemnify Sheraton, insisting that the manuscript endorsement, when properly construed, was only intended to provide coverage for the cost of defense of discrimination suits, but not indemnity if the discrimination is deemed illegal. It avers this type of coverage is consistent with Pennsylvania law that an insurer's duty to defend and duty to indemnify are not the same, see e.g. *Hartford Mutual Insurance Company v. Moorhead*, 578 F.2d 492 (Pa.Super.1990).[1] While Zurich is correct that the scope of the two duties is not identical, the conclusion it reaches suffers two defects. First, its factual premise that there was an admission of unlawful discrimination is wrong—there was no deeming or admitting of unlawfulness by Sheraton when it settled the underlying discrimination claim. Second, its legal premise assumes that the policy language at issue may be properly construed to provide only for a defense. We do not believe that it may. Applying the well settled rules of policy construction, we have serious conceptual difficulties with the assertion that a broad endorsement of coverage may be given a construction whereby indemnity is always an impossibility.

The reasonable expectations of the insured are the focal point in reading the contract language. *Collister v. Nationwide Life Insurance Company*, 479 Pa. 579, 388 A.2d 1346, 1353 (1978). Where the language of the contract is clear and unambiguous, a court is required to give effect to that language. *Standard Venetian Blind v. American Empire Insurance Company*, 503 Pa. 300, 469 A.2d 563, 566 (1983). The language should be given its ordinary meaning, unless it is clear that some other meaning was intended by the parties. *Winters v. Erie Insurance Group*, 367 Pa.Super. 253, 532 A.2d 885 (1987). The rule of construction in favor of the insured is most stridently applied when considering the meaning of exclusions. *Pacific Indemnity Company v. Linn*, 766 F.2d 754 (3d Cir.1985); *Sears, Roebuck and Company v. Reliance Insurance Company*, 654 F.2d 494, 499 (7th Cir.1981).

The situation faced by the court in *Sears* is highly instructive. Sears sought indemnity for underlying suits which alleged that fabric used in girls slacks was defective. The manufacturer of the fabric had a comprehensive liability policy that provided coverage to Sears. However, it contained an exclusion for bodily injury arising out of "products which after distribution ... have been labeled or relabeled or used as ... a part or ingredient of any other thing". The insurer argued that the exclusion should be read to exclude coverage of injuries regardless of whether there was any connection between the injury and the relabeling. Sears had bought the fabric to manufacture clothing sold under its store label.

The court determined that

> If the mere labeling or use as a "part" of the finished slacks could defeat coverage of any defect in the fabric itself, then the vendor's insurance covering Sears could not have been worth the piece of paper on which it was printed ... That construction would nullify the very purpose of the ven-

---

1. Zurich argues

   As applied to the present endorsement, this law means that the insurer must effectively *defend*, but not indemnify for, actions based on alleged discrimination. This result is reached precisely because the insurer must defend in any discrimination suit in which there exists any "potential" that the discrimination alleged *not* be deemed unlawful. However, where as here, the discrimination is deemed (or by the parties, admitted) unlawful, the duty to indemnify is not triggered.

   Memorandum of Zurich Insurance Company at 6–7.

dor's endorsement, causing a forfeiture where the parties intended coverage. This court must assume that [the insurer] intended to insure Sears under the vendor's endorsement of its policy unless there is a nexus between changes made by Sears and the injuries. Any other assumption would allow the carrier to simply accept the premium and avoid any corresponding obligation ... Not only would [the insurer's] interpretation render the vendor's endorsement a nullity, but also it would violate general rules of construction of insurance contracts.

*Sears,* 654 F.2d at 498–499.

Similarly, the construction advanced here by Zurich would render indemnity coverage under the endorsement a nullity, when the ordinary meaning of the words employed do not require such a result. If Zurich's interpretation of the policy were accepted, it would **never** have a duty to indemnify an insured, even though the language of the policy contains no such term.[2] If Zurich had intended that the endorsement only cover defense costs and not indemnity, it certainly could have phrased the endorsement in more specific terms. Rather than make clear that the coverage was for defense costs only, as it now argues post hoc, it drafted the endorsement in broad terms—"the definition of a personal injury is amended to include discrimination"—only to eviscerate this grant of coverage with an equally broad exclusion—"which is not deemed unlawful". As the law does not countenance illusory coverage, *Murray Ohio Mfg. Co. v. Continental Insurance Co.,* 705 F.Supp. 442, 444 (N.D.Ill.1989) citing *Sears,* 654 F.2d at 499, we decline to construe the endorsement as urged by Zurich.

**2.** Under Zurich's construction, it is patently obvious that any discrimination action where the insured suffers a loss would always be deemed unlawful—if the discrimination were "lawful", there would be no loss.

**3.** Since we find no ambiguity, we do not consider the extrinsic evidence submitted by both parties.

**4.** We recognize that this construction might have the unintended effect of dissuading an insurer from settling a discrimination suit, because it would have no economic incentive to compromise the claim: if the insured were to proceed to trial and lose, it would be deemed to have acted

Rather, we find the plain meaning of the language employed provides coverage, both a defense and indemnification, for any discrimination claim where there is no deeming or adjudication of unlawfulness, such as in the instant case where the matter is settled with no admission of liability.[3] While Zurich incorrectly implies there has been a deeming of wrongfulness, the record reflects the opposite. The settlement agreement made no admission of liability or wrongful conduct; as the case was settled, it is axiomatic that there was no adjudication. Accordingly, we conclude that Zurich is liable to indemnify Sheraton for the settlement.[4]

█ The other issue raised in the cross motions is whether Zurich is liable for Sheraton's costs in the PHRC proceeding. The policy provides:

We will have the right and duty to defend any "suit" seeking those damages.

"Suit" is defined as:

a civil proceeding in which damage because of ... "personal injury" ... to which this insurance applies are alleged. "Suit" includes:

(a) An arbitration proceeding in which such damages are claimed and to which you must submit or do submit without consent; or

(b) Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit without consent.

Zurich argues that the PHRC proceeding did not constitute a "suit" because it was not a court action, arbitration or other alternate dispute resolution proceeding involving damages. It asserts the PHRC merely investi-

unlawfully and the exclusion would apply; if the insured were to win, there would be no indemnification to pay. We note, however, that the policy provision at issue here was a manuscript endorsement written specifically for Sheraton. It was not a regularly used standard insurance form. While we have no way of knowing whether this policy language is in widespread use, we believe the insurance industry will recognize that its conduct in settling or refusing to settle claims is governed by a bad faith standard and act accordingly. Certainly, this policy language is in need of further refinement.

gates and attempts to conciliate disputes by issuing probable cause determinations; that no damages were or could have been awarded. This argument is legally incorrect.[5]

It is not disputed that the employee's action before the PHRC was civil in nature; it cannot be argued that it was not a "proceeding". Since the endorsement amended the definition of "personal injury" to include discrimination, we find the PHRC complaint was a civil proceeding because of personal injury. The only issue pressed by Zurich is whether it was a civil proceeding for which damages could be recovered.[6] Pa.Stat.Ann. tit. 43, Section 957(f) gives the Pennsylvania Human Relations Committee the power to "initiate, receive, investigate and pass upon complaints charging unlawful discriminatory practices". If the Commission finds that a respondent has engaged in unlawful discrimination, it may order the respondent to take action, "including but not limited to . . . compensation for loss of work in matters involving the complaint, hiring, reinstatement or upgrading of employes, with or without back pay . . .". Section 959(f)(1). It may also award attorney fees and cost to prevailing complainants. Section 959(f.1). Thus, the face of the statute refutes Zurich's argument that this was not a proceeding in which damages could be awarded. Accordingly, we find it is liable for Sheraton's costs of defense before the PHRC.

---

5. At page 18 of its brief, Zurich appears to assert that the PHRC brought the charges, rather than the fired employee. This is not factually correct. The record is clear that the employee filed the complaint with the PHRC. Complaint, E.D.Pa.Civil Action 95–6829, Exhibit A.

6. As a threshold issue, we note that Zurich states the argument as whether damages, could have been or were **actually** awarded. Whether damages were actually awarded is irrelevant. The policy only requires that damages be alleged.